**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AMERICAN ALLIANCE
FOR EQUAL RIGHTS and DO NO
HARM,

                *Plaintiffs*,

   v.

BUCKFIRE & BUCKFIRE, P.C.,

                *Defendant.*

Case No. 25-13617

**COMPLAINT**

1. As representatives of the judicial and medical systems, who operate in high-trust environments, lawyers and doctors should know best: "Racial discrimination is invidious in all contexts." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 214 (2023) (cleaned up). It "demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220 (cleaned up).

2. Yet a Michigan law firm, Buckfire & Buckfire, P.C., racially discriminates against future lawyers and doctors by running two scholarships: a "Medical Diversity" scholarship and a "Law School Diversity" scholarship. Each of Buckfire's scholarships award $2,000 to winning applicants. Both programs are contractual. And eligibility turns on race: The scholarship is automatically open to "member[s] of an ethnic, racial, or other minority" group; but white applicants are not eligible unless they also "demonstrat[e] a defined commitment to issues of diversity."

1

3. In its history, Buckfire has awarded scholarships to 25 students. Zero were white.

4. Buckfire's race-based scholarships violate 42 U.S.C. §1981, a landmark federal statute that bans racial discrimination in contracting by public and private actors alike.

5. Plaintiffs, American Alliance for Equal Rights and Do No Harm, have members who are victims of Buckfire's discrimination. They are entitled to relief.

## PARTIES

6. Plaintiff American Alliance for Equal Rights is a nationwide membership organization dedicated to challenging preferences based on race and ethnicity. The Alliance was founded in 2021, and it is approved by the IRS as a 501(c)(3) tax-exempt organization. The Alliance has hundreds of members, and its membership continues to grow.

7. Plaintiff Do No Harm is a nationwide membership organization dedicated to protecting healthcare from radical, divisive, and discriminatory ideologies and policies. Do No Harm was founded in 2022, and it is recognized by the IRS as a 501(c)(3) tax-exempt nonprofit. Do No Harm has more than 50,000 members.

8. Both plaintiffs are genuine, voluntary membership associations. Their missions and outreach are highly public and detailed on their public-facing websites. Members voluntarily join and receive regular communications about the associations'

litigation and other activities. Both associations have represented the interests of many of their members in many federal cases.

9. Plaintiffs bring this lawsuit in a representational capacity on behalf of their members who would have standing to sue on their own. All of their standing members voluntarily joined the organization, support its mission, paid dues, authorized the association to represent their rights in this litigation, receive updates and can give input and direction on this litigation, and are represented by the associations in good faith.

10. Defendant, Buckfire & Buckfire, P.C., is a Michigan-based law firm that specializes in personal-injury and medical-malpractice cases. It runs both of the scholarship programs challenged here.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

12. Venue is proper in this district under 28 U.S.C. §1391 because the sole defendant resides here and a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTS

**A. Buckfire operates scholarship programs for law students and medical students.**

13. Buckfire has run the "Law School Diversity Scholarship" since 2013, and the "Medical School Diversity Scholarship" since 2014. Both scholarships are offered once a year. Only one student per year wins each scholarship.

3

14. Buckfire created these scholarships to help students "who are in need of financial assistance achieve their academic and professional dreams."

15. To apply, applicants must complete an online form, submit a "one-page typed essay describing how you have utilized your time promoting ethnic diversity within your community," and attach a "certified, official copy" of their transcript.

16. Each scholarship grants "$2,000 to one student selected by [the] scholarship selection committee."

17. In exchange for a chance to win, applicants must give up certain rights and agree to certain obligations. Applicants must "give the law firm permission to share [their] personal information with the public," agree to "hold the law firm and its agents harmless for any and all potential injury and claims related to [their] personal information," and "waive [their] rights to privacy with respect to all information submitted."

**B.  Buckfire excludes applicants from its scholarships based on race.**

18. To apply or win, both scholarships require an individual be a U.S. citizen, have at least a 3.0 GPA, and have completed at least one semester at an accredited law or medical school.

19. Alongside these other requirements, Buckfire states that an applicant "must" be "a member of an ethnic, racial, or other minority" or have "demonstrate[d] a defined commitment to issues of diversity."

4

20. In other words, all nonwhite applicants are eligible. But if an applicant is white, they are not eligible unless they can show something extra—a "defined commitment to issues of diversity."

21. To enforce this requirement, Buckfire's application requires applicants to disclose their race:

**Race/Ethnicity**

● Asian or Pacific Islander ○ Native American or Alaskan Native ○ Hispanic or Latino ○ Black or African American
○ Multiracial or Biracial ○ White or Caucasian ○ Other race/ethnicity not listed here

22. Buckfire admits that this requirement is designed to preference nonwhite applicants. Its "Medical Diversity Scholarship," Buckfire says, will promote "ethnic diversity."

23. The only "diversity" that Buckfire cares about is race. The scholarships' essay prompts require applicants to describe either "how you have utilized your time promoting *ethnic* diversity" or "how you will use your … degree to promote *ethnic* diversity." (Emphasis added.) These questions are not race neutral; and they preference nonwhite applicants, who can show that their very presence promotes racial diversity.

24. Buckfire announces the winners of its scholarships each year, along with an article describing the winner's race or ethnicity. Out of 25 announced winners, zero have been non-Hispanic white.

5

## C. Buckfire's scholarship program injures members of the Alliance and Do No Harm.

25. The Alliance has members who were and are harmed by Buckfire's racially discriminatory scholarship for law students, including Members A and B.

26. Member A is white and currently enrolled at an accredited law school in the United States.

27. Member A applied for the Buckfire scholarship in August 2025. When he did, he met all of the program's eligibility criteria.

28. Member A submitted the application well in advance of the October deadline and completed all necessary essays and attachments.

29. Despite submitting a compelling application and having credentials that exceed past winners, Member A was denied Buckfire's law scholarship on October 20, 2025. The 2025 law scholarship was instead awarded to Abigail DeMonte, who Buckfire announced is "Hispanic."

30. Although Member A has some scholarships now, they do not cover his entire tuition.

31. Member A has nearly $100,000 in debt from student loans that he took out to cover the cost of law school.

32. Member A hoped to win the Buckfire scholarship to offset his debt and tuition bills, which would free up his own money to help cover personal expenses like daycare for his children.

6

33. Member A finds it offensive and hurtful that his skin color would affect his chances of winning a scholarship that is supposed to help students with financial need.

34. Member A is able and ready to reapply for the Buckfire scholarship, including the now-open cycle that closes in October 2026. If a court orders Buckfire to stop discriminating and undoes the effects of Buckfire's prior discrimination, Member A will apply again. His GPA remains above a 3.0.

35. Member B is white and currently enrolled at an accredited law school in the United States.

36. Member B applied for the Buckfire scholarship in September 2025. When he did, he met all of the scholarship's eligibility criteria.

37. Member B submitted the application well in advance of the October deadline and completed all necessary essays and attachments.

38. Despite submitting a compelling application and having credentials that exceed past winners, Member B was denied Buckfire's law scholarship on October 20, 2025.

39. Although Member B has some scholarships, they do not cover approximately $20,000 of his tuition each year.

40. Member B has applied to many outside scholarships to ease that financial burden.

41. Member B hoped to win the Buckfire scholarship to offset the amount that he must contribute to cover his steep tuition bills.

42. Member B finds it hurtful and un-American that a law firm would let an immutable characteristic like his skin color affect his chances of winning a scholarship.

43. Member B is able and ready to reapply for the Buckfire scholarship, including the now-open cycle that closes in October 2026. If a court orders Buckfire to stop discriminating and undoes the effects of Buckfire's prior discrimination, Member B will apply. His GPA remains above a 3.0.

44. Do No Harm has members who were and are harmed by Buckfire's racially discriminatory scholarship for medical students, including Member 1.

45. Member 1 is white and currently enrolled in an accredited medical school in the United States.

46. Member 1 applied for the Buckfire scholarship in 2025, before the October deadline, and completed all necessary essays and attachments. When he did, he met all of the program's eligibility criteria.

47. Despite compiling a compelling application and having credentials that exceed past winners, Member 1 was denied Buckfire's medical scholarship on October 20, 2025. The scholarship was instead awarded to Lisa Huang, who is Asian-American.

48. Member 1 hoped to win the Buckfire scholarship to offset his steep tuition bills, which would free up his own money to help cover personal expenses like caring for his young daughter.

8

49. Member 1 finds it insulting and demeaning that a law firm would let an immutable characteristic like his skin color affect his chances of winning a scholarship.

50. Member 1 is able and ready to reapply for the Buckfire scholarship, including the now-open cycle that closes in October 2026, as soon as a court orders Buckfire to stop discriminating and undoes the effects of Buckfire's prior discrimination. He continues to satisfy all the eligibility criteria.

## CLAIM FOR RELIEF
### Violation of the Civil Rights Act of 1866
### 42 U.S.C. §1981

51. Plaintiffs repeat and reallege the preceding allegations.

52. Under §1981, "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts." 42 U.S.C. §1981(a). The statute has a private right of action for equitable relief and damages. *AAER v. Founders First*, 2024 WL 3625684, at *3 (N.D. Tex. July 31).

53. Section 1981 bans racial discrimination in contracting by private actors, including Buckfire. *Id.* (citing *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986)).

54. The statute's "broad terms" also bar discrimination "against, or in favor of, any race," including against whites. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019), by protecting the "equal right of all persons … to make and enforce contracts

9

without respect to race," *Domino's Pizza v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). It applies regardless of "whether the aggrieved party is black or white." *Bobo v. ITT*, 662 F.2d 340, 342 (5th Cir. 1981).

55. Buckfire's medical and law scholarships are contractual. "The term contract, as used in §1981, refers to a right in the promisee against the promisor, with a correlative special duty in the promisor to the promisee of rendering the performance promised." *Founders First*, 2024 WL 3625648, at *3 n.7. Buckfire's scholarships fit that definition: They grant applicants a chance to win $2,000 in exchange for applicants giving Buckfire privacy, intellectual-property, and other legal rights. *Id.*; *accord AAER v. Fearless Fund Mgmt.*, 103 F.4th 765, 775 (11th Cir. 2024).

56. Buckfire's scholarships implicate a right that §1981 protects—the right to "make … contracts." 42 U.S.C. §1981(a). Section 1981 protects "would-be contractor[s] along with those who already have made contracts." *Domino's*, 546 U.S. at 476.

57. Buckfire's scholarships intentionally discriminate based on race. "[P]roof of a facially discriminatory … policy" is "direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). That "direct evidence" is present here because the scholarship program "facially" favors nonwhites, and it "facially discriminat[es]" against whites by making them prove an extra "commitment" to "diversity." *Id.* If a nonminority wants to apply or win, in other words, she must "overcome additional hurdles" because of her race. *Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431, 473 (N.D. Tex. 2024).

58. Even if the scholarships were facially neutral, they intentionally discriminate based on race in effect and by design. Buckfire admits that the scholarship is intended to promote "diversity," a term that it defines solely in terms of race. And the fact that 100% of the winners have been nonwhite—as Buckfire boasts on its website—is a stark disparity that alone proves Buckfire's race-based intent.

59. That Buckfire lets some whites apply is not a defense. Buckfire cannot "discriminate against some [whites] on the basis of race … merely because [it] favorably treats other members" of that race, like whites who have satisfied Buckfire of their "defined commitment" to "diversity." *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). "So long as the plaintiff's [race] was one but-for cause" of his exclusion, "that is enough." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment in their favor and against Buckfire and provide the following relief:

A. A declaratory judgment that Defendant's "Law School Diversity Scholarship" and "Medical Diversity Scholarship" violate §1981.

B. A permanent injunction prohibiting Defendant from knowing applicants' race, treating applicants differently based on race, or otherwise considering race as a factor when administering its scholarship programs.

C. Nominal damages.

D. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

E. All other relief that Plaintiffs are entitled to, including any relief necessary to undo Defendant's past discrimination against Plaintiffs' members.

Dated: November 13, 2025                                Respectfully submitted,

Thomas R. McCarthy                                      /s/ *John A. Di Giacomo*
(D.C. Bar #489651)*                                     John A. Di Giacomo (P73056)
Cameron T. Norris                                       REVISION LEGAL, PLLC
(VA Bar #91624)*                                        444 Cass Street Ste. D
R. Gabriel Anderson                                     Traverse City, MI 49684
(TX Bar #24129302)*                                     (231) 714-0100
CONSOVOY MCCARTHY PLLC                                  john@revisionlegal.com
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209                                     *Local Counsel*
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gabe@consovoymccarthy.com

*Application for admission forthcoming

*Attorneys for Plaintiffs*

12

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| American Alliance for Equal Rights, et al. | ) | |
| | ) | |
| *Plaintiffs,* | ) | Civil Action No. 25-13617 |
| | ) | |
| v. | ) | |
| Buckfire & Buckfire, P.C. | ) | Hon. |
| | ) | |
| *Defendant.* | ) | |

**SUMMONS IN A CIVIL ACTION**

To: Buckfire & Buckfire, P.C.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

John A. Di Giacomo
Revision Legal, PLLC
444 Cass Street Suite D
Traverse City, MI
231-714-0100

If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*KINIKIA D. ESSIX, CLERK OF COURT*

By: _____
*Signature of Clerk or Deputy Clerk*

Date of Issuance: _____

AO 440 (Rev. 06/12) Summons in a Civil Action

# Summons and Complaint Return of Service

Case No.
Hon.

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ____Buckfire & Buckfire, P.C.____
was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):* _____
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: